**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.**

**WALTER HINTON AND
MONICA HINTON,**

Plaintiffs,
vs.

**TURNING POINT BRANDS, INC.,
INTERNATIONAL VAPOR
GROUP, INC.; VAPORFI
FRANCHISING LLC, NICOLAS
MOLINA,
FRANCHISE CREATOR, INC.,
KENNETH F. DARROW, P.A.,
JOHN DOES 1-10, and
ABC COMPANIES 1-10,**

Defendants.
_____/

## NATURE OF THE ACTION

### A.   Fraudulent Inducement of Business Relationship with Plaintiffs

1.      This action involves the fraudulent inducement of Plaintiffs' significant million-dollar plus monetary investment in the VaporFi Franchising LLC franchise system as a franchise developer through the systematic and purposeful concealment of material information and required federal franchise disclosures by Defendants International Vapor Group, Inc. ("IVG") and Nicolas Molina ("Molina") and through their purposeful misrepresentation of an intention to develop a system of legitimate brick-and-mortar franchised business locations throughout the United States.

2.      More specifically, Defendants IVG and Molina, together and in concert with various other parties named herein, have knowingly and intentionally concealed, and through their agents and successor businesses continue to conceal, material information regarding multiple prior litigations against Molina that involved numerous allegations  of consumer fraud that should have

been properly disclosed in various annually updated iterations of the VaporFi Franchise Disclosure Document ("VaporFi FDD" or "FDD"), all for the purpose of deceiving the consumer public and inducing financial investments.

3.      Such concealment was purposeful and specifically and squarely designed to induce Plaintiffs, other similarly situated franchisees, developers and investors, and the consumer public to make substantial monetary investments in a business opportunity that ***they would never have originally considered*** had IVG, Molina and the various other defendants properly disclosed details of the previous alleged deceptive consumer practices for which Molina had previously been accused.

4.      Indeed, not only had Molina been previously implicated in a wide array of consumer abuses and sharp business practices, such complaints had also been brought by United States federal agencies (most notably the Federal Trade Commission) as well as various State Attorneys General.

5.      Despite the existence of multiple prior lawsuits in which Molina was named in both an agency capacity and in his individual capacity, information regarding these matters was never properly disclosed in Item 3 (Prior Litigation) of the VaporFi FDD in any of the multiple (annually updated) iterations of that document that were prepared and eventually furnished to prospective franchisees.

6.      In preparation of the VaporFi FDD, IVG and Molina retained the services of the Kenneth F. Darrow, P.A. and its principal Kenneth Darrow, Esq. As set forth herein, the FDD prepared by Darrow, based upon information provided to this attorney by IVG and Molina, should have properly disclosed multiple lawsuits alleging fraud in which Molina was named as an individual party defendant, in concert with certain businesses in which he was previously involved.

7.      The Darrow Firm and Attorney Darrow should have, but failed to, perform the requisite due diligence into the accuracy of information provided by IVG, its agents and Molina regarding prior litigation involving the franchisor's principals. While the Darrow Firm and Attorney Darrow's attorney-client relationship was with IVG and/or one or more of its affiliates, it was at all times understood that third-party prospective franchisees and investors such as Plaintiffs would have relied (and, indeed, did rely) on the fraudulent and/or negligent representations contained in the FDD.

8.      In connection with the establishment of the VaporFi franchise and sale of franchise interest to Plaintiffs and other members of the consumer public, IVG and Molina also retained the services of Defendant, Franchise Creator, Inc. ("Franchise Creator") which entity and its management assisted IVG in a "consulting" capacity in both the establishment of the brand in the process of selling franchise interests to prospective investors. Indeed, Franchise Creator was directly involved in both soliciting and selling franchise interests to prospective franchisees in the State of Florida and other states, using the incomplete, illegal and deceptive VaporFi FDD.

9.      Franchise Creator and its management also directly interfaced with prospective franchisees and, at all relevant times, held itself out as either an affiliate or agent of IVG and its management.  At all relevant times, Franchise Creator owed a duty to all individuals with whom it sought a franchise investment and the general consumer public to whom franchises were being offering and breached that duty by actively participating in the dissemination of the false and fraudulent VaporFi FDD to prospective franchisees and/or developers.

10.     The actions of IVG and Molina, together with the actions and representations of the other named defendants, constituted not only a fraud upon the Plaintiffs but also upon the consumer public. In reliance upon the representations made in the VaporFi FDD, which directly violated

Federal Trade Commission Rule 436, Plaintiffs invested more than one million dollars ($1 million) into the franchise system between 2016 and the present date.

11.    Such fraudulent concealment is also a violation of the Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, ("FDUTPA")and entitles Plaintiffs to rescission, restitution, injunctive and declaratory relief and other damages.

12.    Soon after Plaintiffs' entry into the VaporFi franchise system in late 2016, Plaintiffs also learned that the brick-and-mortar franchise location that they opened, as the first of seven (7) such anticipated locations, was ***nothing more than an experimental business model*** to accumulate franchisee's (walk-in) customer information, attract these customers to IVG's Vaporfi.com online business and bolster the sales of IVG's online business platform, all to the detriment of Plaintiffs and similarly situated franchisee store owners.

13.    By this time, Plaintiffs' options were limited, as they had already invested hundreds of thousands of dollars of their own money, and also borrowed hundreds of thousands of dollars (at the suggestion of IVG personnel) to finance the acquisition of the franchise interest and operate the business.

**B.  Fraudulent and Deceptive Practices Persist After Plaintiff's Entry into Franchise System**

14.    After leading Plaintiffs and other VaporFi franchisees and investors to believe that they had legitimate designs to expand the franchise system and gain a foothold in the vaping business, IVG and Molina conspired to aggregate customer information collected at the brick-and-mortar store locations to target for online sales (of the same products offered at drastically reduced prices) and compete directly with the business of VaporFi store owners, including Plaintiffs.

15.    Indeed, IVG, its management and Molina never actually intended to grow and develop a "brick-and-mortar" retail franchise system; rather, they used these businesses to test the

retail market for their products.  In doing so, IVG and Molina misused the franchise model to lure prospective franchisees/investors and generate short term revenues through franchise fees, royalties and marketing fees, all in a covert effort to feed its real business: its corporate, online store model.

16.     Compounding matters, IVG routinely comingled personnel, capital and other basic resources with Defendant, VaporFi Franchising LLC, the limited liability company it created solely as a repository for franchise fees and related fees.  For instance, principal IVG personnel such as Ms. Corti Lewis and Mr. Jason Henshaw often shared dual roles with VaporFi Franchising but were at all times employees of IVG.

17.     Upon information and belief, Defendant VaporFi Franchising LLC, which despite being designated as the "franchisor" was never operating as a going concern, and was largely, if not completely, funded by IVG.  Upon further information and belief, IVG used VaporFi Franchising LLC as nothing more than a liability shield and to otherwise abuse the corporate form.

18.     In or about September 2018, despite a litany of problems plaguing its franchise business model, the VaporFi franchise system was sold to Defendant Turning Point Brands, Inc. ("TPB"), which assumed day-to-day management and control of the business, continued to offer and sell franchise business opportunities to the general public and – despite having an opportunity to properly update and correct the misinformation contained in the FDD – continued to purposefully and/or recklessly conceal material information pertaining to the prior litigations that should have been disclosed in the various prior iterations of the FDD.

19.     At the time of the of the TPB acquisition, Plaintiffs and other franchisees had already complained to IVG and its management that the franchise system was being subverted by the ongoing poaching of customers for the benefit of the vaprofi.com online store.  While

promising to rectify the systematic poaching of brick-and-mortar store customers, TPB took no action to cease the use of such information and the marketing of VaporFi products directly to potential customers at a substantial discount.

20.     In connection with the sale, Molina, VaporFi Franchising LLC's and IVG's chief executive, remained associated with the franchise system in a consulting capacity and continued to be compensated in that role. Additionally, most, if not all, existing IVG personnel remained in place despite the ongoing issues with online ordering and what appeared to be a purposeful interference in franchisee business.

21.     TPB has not only acquired the VaporFi business but has, along with IVG, continued to function as the alter ego for the entity VaporFi Franchising LLC, *which entity they attempted to dissolve and has remained inactive status since September 2018*. For instance, TPB and IVG assumed day-to-day decision-making responsibilities for the entity, has made all material management decisions for VaporFi Franchising LLC, and comingled management (and, upon information and belief, assets) between TPB, IVG and the VaporFi entity. These actions extended far beyond mere parent control over a subsidiary entity and are tantamount to alter ego control and a total blurring and abuse of the corporate form.

22.     Throughout 2018 and 2019, Plaintiffs and other franchisees in the VaporFi system pleaded with management for TPB and IVG to address ongoing issues dating back to their original purchase of their franchise location, as well as the apparent scheme by the owners of the franchise system to overhaul the entire system and compete with franchised locations for customer business. During many of these discussions it became increasingly clear that TPB and IVG were running the franchise system and were making day to day decisions on its behalf.

23.     TPB also began to assert so much control that it asserted contractual rights against Plaintiffs and other franchisees despite not having been a signatory to any contract.

24.     Plaintiffs also learned TPB's overarching control of the VaporFi franchise system in or about June 2019, when it was disclosed that TPB Chief Operating Officer Mr. Graham Purdy was making decisions regarding franchise management operations.   Also, IVG's "Director of Franchising" Mr. Jason Henshaw (who also identified himself as a TPB on LinkedIn and other social media platforms) directly organized and oversaw franchise meetings and fielded inquiries and concerns from franchisees, regarding not only operational issues but also the concerns over the initial fraudulent disclosures.

25.     Between 2018 and the present, TPB has also continued to control and operate the franchise system in accordance with the apparent scheme to convert the business to one for online ordering, further undermining the interest of Plaintiffs and their other franchisees and while also devaluing the franchise locations. ***Throughout 2019, TPB's control over the VaporFi franchise operation was overarching and extended beyond mere day-to-day management to include its assertion of rights under the franchise contract for royalties and other fees.***

26.     Plaintiffs and other franchisee businesspersons' pleas for a correction to these fatal system abuses fell on deaf ears and persisted through the end of 2019. During this time period, after assuming control of the VaporFi franchise business, TPB, IVG and their respective (shared) management allowed the franchise system to fall into a state of disrepair in the face of federal and state government scrutiny over health and safety concerns levelled at the vaping industry.

27.     In Summer 2019 TPB's obvious direct control and management of the franchise system and utter disregard for the corporate form culminated in TPB actually sending Plaintiffs and other franchisees "Default Notices" and proposed settlement terms to govern their separation

from the dying franchise business.  The "default notice" correspondence were sent by TPB on "Turning Point Brands, Inc." letterhead, by TPB's general counsel Don Becker, Esq., and purported to exert TPB's own right to default and terminate the VaporFi franchise relationships. At this time, it became abundantly clear to Plaintiffs and other franchisees that TPB was indeed running the business of VaporFi Franchising, asserted rights pursuant to the franchise agreement and had effectively stepped into the shoes of the franchisor and IVG.

28.     In early 2020, TPB and IVG officially ceased offering franchises to the consumer public and, upon information and belief, have put to into effect a plan to wind down the entire VaporFi franchising operation. TPB and IVG have taken the position that the wind-down was necessitated by the federal government's tightening regulations over "vaping" businesses and their products; however, the franchise system had been rendered unprofitable for Plaintiffs and other franchisees for years by the time the "vaping crisis" became a matter of public concern.

29.     Defendants IVG and TPB also have taken retaliatory action against Plaintiffs and certain other similarly situated franchisees who have spoken out and brought attention to both the initial fraudulent concealment in the VaporFi FDD, and the apparent ongoing conspiracy to disenfranchise brick and mortar store owners by defaulting and subsequently terminating these parties' franchise agreements.

30.     In 2020, in direct response to Plaintiff's complaints and demands for rescission and other remuneration, Defendants IVG and TPB "terminated" Plaintiffs' franchise rights and shut off Plaintiffs' access to VaporFi's point of sales (POS) System.

31.     As set forth herein, as a direct and proximate result of the fraudulent and other tortious conduct of the Defendants, individually and in concert with each other, including the actional violations of FDUTPA, statutory protections for franchisees in the State of Georgia and

8

the commission of common law fraud and other torts, Plaintiffs have sustained and continue to sustain catastrophic financial losses and monetary damages of more than $1.5 million.

## THE PARTIES

32.     Plaintiffs, Walter Hinton and Monica Hinton ("Plaintiffs"), husband and wife, are residents of the State of Georgia.

33.     Defendant International Vapor Group, Inc. ("IVG") is a corporation with principal offices located at 15050 Northwest 79 Center Suite 101A , Miami Lakes, FL 33016. IVG regularly does business in the State of Florida and in this district and, as the owner of VaporFi Franchising LLC and its franchise business, was directly involved in the fraudulent and other conduct alleged herein.

34.      Defendant Turning Point Brands, Inc. ("TPB"), a Delaware Corporation, is the owner of Defendant IVG and the owner of the VaporFi Franchise System. Its principal place of business is located at 5201 Interchange Way, Louisville, KY 40229. It does business in the State of Florida and in this district in connection with its operation and management of IVG and the VaporFi franchise business.

35.     Defendant, Nicolas Molina, individual, is the former CEO of International Vapor Group and VaporFi Franchising LLC and is a resident of the State of Florida and resides in this district with a last known address of 1000 South Pointe Drive, #1901 Miami Beach, FL 33129 Molina does business in the State of Florida and in this district. At all relevant times herein, Molina acted as an executive of IVG or as a consultant of IVG and TPB.

*36.*     Defendant VaporFi Franchising LLC is a limited liability company created by Defendant IVG for the purpose of running the VaporFi-brand franchise operation. Its principal place of business is located at 14300 Commerce Way.

Miami Lakes, Florida 33016.   During all times relevant, VaporFi Franchising LLC has done business in the State of Florida and in this district.   Upon information and belief, VaporFi Franchising LLC was, and is, a shell corporation created as a liability shield for Defendant International Vapor Group and, upon further information and belief, has ceased to be a going concern.   ***On or about September 5, 2018, Defendant Molina, and/or his agents, VaporFi Franchising LLC's CEO sought to dissolve this entity.   VaporFi Franchising LLC has been inactive since that date.***

37.   Defendant Kenneth F. Darrow, P.A. ("Darrow Law Firm") is an entity that was doing business in the State of Florida and in this district with principal offices located at 8440 S Dixie Hwy Miami, FL 33143.   The Darrow Law Firm was counsel for Defendants IVG and Molina and, upon information and belief, VaporFi Franchising LLC in the preparation of the disclosure documents that are the subject of the statutory and fraud claims in this matter.

38.    Defendant Kenneth F. Darrow, Esq. was the principal of Darrow Law Firm with a principal office located at located at 8440 S Dixie Hwy Miami, FL 33143.

39.   Defendant Franchise Creator, Inc. ("Franchise Creator") is an entity doing business in the State of Florida with principal offices located at 7300 N Kendall Dr #340, Miami, Florida 33156.   Franchise Creator acted as a franchise consultant to Defendants IVG and Molina and was involved in the establishment of the Vaporfi franchise and sales of franchise rights to third-party consumers and certain tortious acts complained of herein.

40.   Defendants, John Does 1-10, are individuals who are currently unknown, but who are believed to have taken part in the actions complained of herein within the State of Florida and in this district.  John Does 1-10 are believed to have regularly done business in the State of Florida and have availed themselves of the laws and jurisdiction of this Court.

41.     Defendants ABC Companies 1-10 are legal entities that are currently unknown, which are believed to have taken part in the actions complained of herein within the State of Florida and in this district.  ABC Companies 1-10 are believed to have regularly done business in the State of Florida and have availed themselves of the laws and jurisdiction of this Court.

## JURISDICTION AND VENUE

42.     This court has personal jurisdiction over each of the named Defendants in this action because each of the Defendants regularly transacted business in this district during all time periods relevant to this Complaint. Moreover, many activities giving rise to this action have taken place through contacts and communications in and into this district.

43.     Personal jurisdiction is proper before this Court pursuant to Fla. Stat. § 48.193(1)(a)(1) and (2) because Defendants operate, conduct, engage in, and carry on business in Florida, and have committed a tortious act within this state targeted towards Florida businesses and residents. Personal jurisdiction is also proper before this Court pursuant to Fla Stat. § 48.193(2) because Defendants engage in substantial and not isolated activity within Florida.

44.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

45.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in this action have occurred in the Southern District of Florida. Several named defendants reside or are headquartered in this district. Venue lies in the Southern District of Florida under 28 U.S.C. § 1391 because: (a) certain  of the defendants reside or do business and are amenable to service there; (b) the Development Agreement entered into between Plaintiffs and Vaporfi Franchising LLC chose this

district as the "only proper and exclusive venue and form for adjudicating any dispute under or in connection with" the VaporFi Development Agreement.

A.    **IVG, VaporFi Franchising LLC and Molina's Knowing Violations of FTC Rule 436 and Fraudulent Inducement of Franchise Relationship with Plaintiffs**

46.    In 2016, Plaintiffs began discussing VaporFi franchise opportunities through IVG's consultant Kirsty Pope. Ms. Pope had previously been affiliated with Defendant Franchise Creator and aggressively solicited Plaintiffs to invest in the business, not just as a franchisee but also as a developer.

47.    At all relevant times, IVG described its business as the marketing and sale of a broad array of proprietary and third-party vapor products direct to adult consumers via a best-in-class online platform under brand names such as VaporFi, South Beach Smoke, and DirectVapor.

48.    IVG marketed the VaporFi franchise as being an effective in-store experience at its corporate and franchise retail storefronts where consumers can receive knowledgeable advice on purchases from experienced employees.

49.    During Plaintiff's pre-contractual investigation of the VaporFi franchise opportunity, Plaintiffs were impressed by VaporFi's purported plans for a retail business model and certain of its differentiating characteristics in what was then a burgeoning "vaping" market.

50.    A significant incentive for Plaintiffs to join IVG's franchise in the role of a "developer" was the purported business acumen, reputation, and expertise of its then-Chief Executive Officer (CEO), Defendant, Molina.

51.    At all relevant times, Molina represented himself as a successful entrepreneur with forward-thinking business sense and a keen understanding of the "vaping" business. Molina also

purported to have established a highly successful online purchasing platform that had succeeded in strong sales of both IVG's own proprietary products and other vaping products.

52.     During the time period in which Plaintiffs were investigating the concept of making a franchise investment, while being made aware of certain of Molina's purported business successes, they were also unaware of, and, in fact, kept completely in the dark about, Molina's serious prior legal issues, including multiple lawsuits that alleged that Molina, individually and in concert with others, had purposefully deceived the consumer public in various other businesses in which he was a principal or owner.

53.     Ms. Pope, of course, mentioned nothing of these issues and touted only the potential growth of the VaporFi franchise and the opportunity for Plaintiffs to build out and develop an entire franchise "territory."

54.     In May 2016, Ms. Pope, as an agent of IVG, Molina and VaporFi Franchising furnished a copy of VaporFi's most current FDD and form franchise agreement and development agreement to Plaintiffs.  After inquiring with Ms. Pope whether they should have an attorney review the FDD and form franchise documents, Ms. Pope indicated it would be unnecessary because the franchisor "had franchise counsel."  Plaintiffs relied upon this representation and did not seek or retain counsel to review the FDD, development agreement, franchise agreement or any other related documents.

55.     Plaintiffs eventually agreed to enter into a Development Agreement granting the rights to open seven (7) VaporFi Franchise locations.

56.      In connection with this Agreement, Plaintiffs were granted "exclusive rights to develop and open locations in the following counties in the State of Georgia:  Fulton County, Georgia, Cobb County Georgia, DeKalb County and Clarke County."

57.   In exchange for these development rights, Plaintiffs agreed to pay the initial sum of $105,000.

58.   In or about October 2016, contemporaneous with the time period that Plaintiffs entered into their Development Agreement and committed to investing hundreds of thousands of dollars to build out and run a franchised location, Molina gave an interview to www.betheboss.com in which he touted both his own entrepreneurial experience and that of the IVG management team that was "backed" the VaporFi franchise.

59.   Molina specifically referenced the expertise and experience of IVG's management and specifically highlighted IVG and VaporFi's Vice President of Store Operations, Cortni Lewis, who he described as having over 20 years of experience in retail and that Ms. Lewis was dedicated to ensuring that all awarded franchisees are given the tools they need to run a successful retail business. While Molina did not explain how and why he and others were performing dual roles for both IVG and the newly formed franchisor entity, the dominance and control of the franchise systems' daily operations are clearly evident in his own statements and in the structure of the organization.

60.   Of course, Molina's interview neglected to mention the various consumer fraud litigations in which Molina had been named in the preceding decade or the various other businesses in which he had been involved in alleged deceptive consumer practices. Notably, Molina also asserted that he had taken a "three-year sabbatical" prior to starting IVG; however, during this time period Molina was embroiled in the same lawsuits that were concealed in the VaporFi FDD.

61.   Unbeknownst to Plaintiffs, the March 28, 2016 version of the VaporFi FDD that they received in May 2016 from Ms. Pope purposefully concealed material information required to be disclosed under federal law and, by extension, the statutory laws of various states.

62.     Indeed, Federal Trade Commission (FTC) has enacted clear rules (under "new" FTC Rule 436) regarding Franchise Disclosure Document ("FDD") disclosures and how certain items must be disclosed.  Item 3 of the FDD requires the disclosure of pending litigation and related matters.

63.     Item 3 of the March 28, 2016 version of the VaporFi FDD received by Plaintiffs states as follows:

**"No litigation is required to be disclosed in this item."**

64.     The representation made in VaporFi's Item 3 was a blatant lie at the time of its making and, more technically, constituted a fraudulent concealment of material facts relevant to any prospective franchisee considering making a substantial monetary investment in the VaporFi franchise. This representation was also designed to induce prospective franchisees to invest in the franchise system that was being run by a principal, Molina, who had repeatedly been accused of preying upon hapless consumers.

65.     The pertinent aspects of these FTC requirements as pertain to the Item 3 disclosure provide, in relevant part:

> **The franchisor, its affiliates, its predecessors, parents, or individuals working for the franchisor with significant management responsibility are the parties who need to disclose material legal actions**. Parent companies need to disclose their litigation history only when they guarantee the franchisor's performance or have post-sale obligations. Any affiliate who: (1) guarantees the franchisors performance; (2) offers franchises for sale under the franchisor's principle trademark; or (3) under certain circumstances, affiliates who have sold franchises in any line of business within the last ten years.
>
> Second, the Franchisor et al. must disclose three types of legal action and some regulatory actions.

15

**a) Pending legal actions, these parties must disclose pending criminal, regulatory, or civil actions involving illegal or deceptive conduct or unfair trade practices.**

b) They must disclose any past convictions, no contest, or guilty pleas within the last ten years resulting from criminal, regulatory, or civil actions alleging illegal, deceptive, or unfair actions or practices.

**c) They must disclose material civil actions involving any franchise relationship. Additionally, they must disclose currently effective injunctive or restrictive orders brought by a public agency that involve violations of securities, franchise, or trade practices**. (emphasis added.)

66.     In actuality, at the time this Item 3 disclosure was required and ignored, Molina had been involved in **multiple** fraud-related lawsuits and investigations/agency prosecutions by the Illinois Attorney General, the Attorney General of the State of Florida and, perhaps most relevant to the instant dispute, the Federal Trade Commission.

67.     Each of these matters had been commenced within ten (10) years of the issuance of the FDD. As such, each of these matters, and any related matters, should have been properly disclosed pursuant to the FTC Rule disclosure requirements.

68.     Attached hereto as **Exhibit A** is a true copy of the Complaint in *Federal Trade Commission v. Home Assure, LLC, Nicolas Molina, et als*., Case No. 8:09-cv-00547 (United States District Court, Middle District of Florida – Tampa Division) in which the FTC sought injunctive and other equitable relief, restitution and other damages in connection with alleged fraudulent mortgage foreclosure rescue services in which Molina had been personally involved.

69.     Pursuant to FTC Rule 436 the Federal Trade Commission matter (Exh. A.) should have been, but was not, properly disclosed in the March 28, 2016 version of the VaporFi Franchising LLC FDD that was delivered to Plaintiffs.

70.     Attached hereto as **Exhibit B** is a true copy of the Complaint in the matter of the *People of the State of Illinois vs. Advanced Wellness Research, Inc., Nicolas Molina, et als.*, Case No. 09CH29098, seeking injunctive relief, restitution and other damages violations of Subsection 1(f) State of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ICLS 505/1(f), et seq. in connection with deceptive practices related to the online sale of products to consumers, among other things.

71.     Pursuant to FTC Rule 436 the State of Illinois matter (Exh. B) should have been, but was not, properly disclosed in the March 28, 2016 version of the VaporFi Franchising LLC FDD that was delivered to Plaintiffs.

*72.*     Attached hereto as **Exhibit C** is a true copy of the September 16, 2009 Complaint in the matter, *Attorney General/State of Florida v. Advanced Wellness Research, Nicolas Molina, et als,* Case No. 09051002 (17th Judicial Circuit, Broward County, Florida) seeking injunctive relief, restitution and other legal and equitable relief on behalf of Florida consumers.

*73.*     Pursuant to FTC Rule 436 the State of Florida matter (Exh. C) should have been, but was not, properly disclosed in the March 28, 2016 version of the VaporFi Franchising LLC FDD that was delivered to Plaintiffs.

74.     Attached hereto as **Exhibit D** is a true copy of the January 3, 2012 Final Consent Judgment in the matter Office of the *Attorney General/State of Florida v. Advanced Wellness Research, Inc. et als.* in which Molina and others *consented to injunctive relief regarding trade practices involving US consumers* as other equitable and monetary relief and provisions regarding future violations.

75.     Pursuant to FTC Rule 436 the State of Florida Consent Judgment (Exh. D) should have been, but was not, properly disclosed in the March 28, 2016 version of the VaporFi Franchising LLC FDD that was delivered to Plaintiffs.

76.     IVG, Molina and VaporFi's blatant FTC disclosure violations through their collective failure to properly disclose the lawsuits directly involving Molina, also constitutes a violation of Florida's *Deceptive and Unfair Trade Practices Act*, ("FDUTPA"). Fla. Stat. §501.202(2).

77.     FDUTPA declares unlawful any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1); *see also, KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1073 (Fla. 5th DCA 2008) (the three elements of a FDUTPA claim are 1) a deceptive act or unfair practice; 2) causation and 3) actual damages.)

78.     Such conduct further constitutes fraud in the inducement under Florida Law. *See,* e.g., *Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*, 262 F.Supp. 2d 1334, 1342 n. 1 (S.D. Fla. 1999).

In the aggregate, such fraud, entitles Plaintiffs to full rescission and damages under Florida Law. *Billian v. Mobile Corporation*, 710 So.2d 984, 991 (Fla. 4th DCA 1998), *rev. denied* 725 So.2d 1109 (Fla. 1998) (discussing elements of rescission claim under Florida law).

### B.     Involvement of Darrow Firm and Attorney Kenneth Darrow in Preparation of Franchise Disclosure Document.

79.     IVG and Molina retained the Darrow Firm and Attorney Darrow to assist in the preparation of their FDD and form franchise contracts.

80.     At all relevant times, the Darrow Firm understood that the FDD and related franchise materials would be presented to prospective franchisees in the State of Florida and throughout the United States.

81.     The Darrow Firm was also aware of the requirements under FTC Rule 436 to make proper disclosures in Item 3 of the FDD to include all relevant litigation against the franchisor and its principals.

82.     The Darrow Firm and Attorney Darrow recklessly and/or intentionally assisted IVG, Molina, and VaporFi in the concealment of each of the litigation matters referenced herein, which fell squarely within the matters required to be disclosed by the FTC.

83.     The Darrow Firm and Attorney Darrow were, at all relevant times, highly esteemed members of the franchise bar and routinely represented franchisors in the preparation of FDDs and related franchise documents and in the registration of franchises to do business in various states. The Darrow Firm and Attorney Darrow were also familiar with the FTC Rule, its requirements and the seriousness of a violation of the FTC Rule by way of a concealment of material fact and/or purposeful misrepresentation.

84.     Upon further information and belief, as experienced franchise counsel, the Darrow Firm and Attorney Darrow were also aware that the purpose of the FDD was to provide material information to prospective franchisees and investors who would rely upon same in their own due diligence analysis of a franchise opportunity.

85.     Nevertheless, the Darrow Firm permitted the creation, filing and dissemination of the incomplete and fraudulent VaporFi FDD which was received by and relied upon by Plaintiffs and similarly situated VaporFi franchisees, developers and investors.

86.     The Darrow Firm and Attorney Darrow knew or should have known that the representations contained in Item 3 of the FDD were false and misleading and improperly concealed material information that should have been disclosed to the consumer public.

C.     **Involvement of Defendant Franchise Creator in the Establishment of VaporFi Brand and Initial Franchise Sales and Dissemination of Fraudulent FDD.**

87.     Defendants IVG, Molina and Franchise Creator were each directly involved in the sale of VaporFi franchises to the consumer public using an FDD that purposefully concealed the existence of the aforementioned lawsuits.

88.     Franchise Creator contracted directly with IVG and/or Molina to work in a consultative capacity to assist in the development of the franchise brand and sale of franchises. Upon information and belief, as part of its business, Franchise Creator assists developing franchisors prepare their disclosure materials and contractual documents and ostensibly functions as a "middle-man" or liaison between franchisor and prospective franchisees/investors.   Upon further information and belief, Franchise Creator was engaged by IVG and Molina to act in this capacity in connection with the development of the VaporFi Franchise and the solicitation of new franchisees.

89.     In addition to the internal support they provided to Molina, IVG and the franchisor, Franchise Creator went further to directly with prospective franchisees, including but not limited to VaporFi franchisee/investor Mr. Brett Rice, negotiated franchise agreements and addenda with franchisees and investors on behalf of VaporFi, and collaborated with IVG, its representatives, affiliates, and their Counsel the Darrow Firm, in connection with the negotiation and finalization of the sale of franchise interests.   Attached hereto and made a part hereof as **Exhibit E** is a true

copy of an email from Franchise Creator to Mr. Rice attaching the most current iteration of the allegedly fraudulent VaporFi FDD.

90.    Franchise Creator reviewed the contents of the VaporFi FDD prior to disseminating it and other franchise materials to Brett Rice, other VaporFi franchisees and investors and the consumer public and the consumer public and had disseminated multiple iterations of the agreement to prospective franchisees from as early as 2014.

91.    By acting with apparent and/or actual authority as an agent of VaporFi/IVG and Molina, Franchise Creator assumed a duty to prospective franchisees and the consumer public that received the FDD that the information it was furnishing complied with all applicable rules and regulations and certainly that it did not contain any misrepresentations or purposeful omissions.

92.    Franchise Creator disseminated various iterations of the VaporFi FDD to unwitting prospective franchisees during the critical initial stages of the franchise.

93.    Franchise Creator was grossly negligent and breached its associated duty of care by making affirmative representations to prospective franchisees and by furnishing the incomplete, deceptive and illegal VaporFi FDD that failed to include multiple litigations and disclosable events referenced herein.  As such, Franchise Creator was also directly involved in the fraudulent acts giving rise to Plaintiffs' claims under FDUTPA.

 

 

**D.    IVG's Continued Deceptive and Fraudulent Conduct After Entry into VaporFi System**

94.    Soon after joining the franchise system, Plaintiffs learned that IVG, Molina and the various other owners of the VaporFi system had no actual intention to build a network of physical franchise locations and were, instead, using Plaintiffs' and other similarly situated franchisees'

efforts to develop a local clientele in their respective territory(/ies) as a means to build the VaporFi online platform and related business.

95.     In actuality, Plaintiffs and other similarly situated developers, franchisees and investors were being used by VaporFi to test the consumer market, make certain products that could not be sold "online" available at the retail level and otherwise assist IVG, Molina and VaporFi develop a master customer list to which they would direct sales through an increasingly aggressive online mass e-mail solicitation campaign.

96.     Initially, Plaintiffs and similarly situated franchisees were promised a percentage of sales from products sold online to customers within their protected territory.

97.     This promise was false at the time of its making and was designed to induce Plaintiffs and other similarly situated franchisees not to object to the online campaign but to continue to support the VaporFi scheme and to, unwittingly, allow the franchisor to compete directly with their business, while generating revenues through franchise fees, royalties, adverti1sing fees and related payments from franchisees.

98.     After the Hinton's entered into the franchise system as developers,  IVG, Molina, VaporFi, and, after purchasing the business in late 2018, Defendant, TPB, continued to improperly and surreptitiously direct sales efforts at customers of franchisee stores to solicit their business online via the vaporfi.com website, and failed and/or refused to properly credit franchisees with their agreed upon percentage of such sales.

99.     IVG, Molina, VaporFi, and, later TPB, also misrepresented their efforts to correct what they attempted to describe as system glitches, when, in fact, they had no intention to properly compensate franchisees.

100.     As franchisee business continued to struggle, IVG, Molina, VaporFi TPB continued to develop an increasingly aggressive marketing campaign designed, in part, to undermine its own franchisees' business activities by offering the same products sold in stores at drastically reduced prices.

**E.     Sale of IVG and Franchised Business to Turning Point Brands, Inc.**

101.     In September 2018, with much fanfare, the VaporFi franchise was sold by IVG and Molina to Defendant TPB, a publicly traded company (NYSE:TPB) that is focused on the sale of alternative tobacco products.

102.     TPB purchased the business for an amount in excess of $20 million and permitted Molina to remain associated with IVG's business in a consulting capacity and the terms of the agreement in TPB's own public statement were as follows:

> The acquisition values IVG at $24 million plus $4.5 million of contingent earnouts. Acquisition consideration comprises $15 million of cash, $5 million equivalent of TPB common shares and a $4 million 18-month promissory note. The contingent earnouts are based on performance metrics paid out at the end of two years. For the twelve-month period ending June 30, 2018, IVG had revenue of approximately $47.7 million and EBITDA of $4.9 million. TPB expects the transaction to be immediately accretive. As part of the acquisition, TPB will consolidate underperforming overlapping channels that will lower remaining TPB 2018 net sales by $5.0 million.

103.     Molina remained associated with IVG and VaporFi as a consultant to the business and was compensated accordingly.  Molina was also subject to receive the referenced $4.5million of contingent earnouts in or about August 2020.

104.     On or about the same date of the sale, Molina and/or other representatives of VaporFi Franchising LLC sought to dissolve the entity.  No notice was ever given to Plaintiffs or any other franchisees of the intent to dissolve the entity or the status of the entity.  Attached hereto

and made a part hereof as **Exhibit F** are true copies of documents evidencing this effort to "dissolve" VaporFi Franchising LLC and its presently inactive status.

105.    Since September 2018, VaporFi Franchising LLC has remained "inactive," undercapitalized and has effectively ceased to be a going concern.

106.    Nevertheless, IVG and TPB have presented the entity as operating, functioning and as a fully functioning and operating business to both franchisees, developers and investors and the general public. IVG and TPB also continued to offer franchise interests for sale during this time period.

107.    IVG and TPB and their respective representatives purposefully concealed these efforts to dissolve VaporFi Franchising LLC which were made, upon information and belief, with the full knowledge and approval of IVG and TPB, and also concealed VaporFi Franchising LLC's inactive status, while at the same time assuming absolute control of the day-to-day operations of the VaporFi franchise.

108.    Upon information and belief, at all times relevant to the sale, TPB had retained legal counsel and performed the requisite due diligence into IVG and its subsidiaries prior to the acquisition of IVG and the franchise business and any and all affiliated entities.

109.     As such, TPB and its management knew, or should have known, of the various prior litigations naming Molina (who was the chief executive and public face of the target business) that are referenced herein.  *See* Exhibits A, B, C and D.

110.    TPB also knew or should have known – and is certainly chargeable with knowing – that the various iterations of the VaporFi FDD being disseminated to the consumer public concealed material information pertaining to each of these litigations. Nevertheless, TPB

consummated the sale, continued to associate with Molina as a consultant/advisor and maintained the same management team and structure in the franchise business.

111.    After the sale September 2018, TPB, while continuing to sell franchise interests and development rights to the consumer public, it also retained a majority of IVG's then-existing management team to run the franchise business including Courti Lewis. ***As the first line of defense to ongoing franchisee complaints Ms. Lewis would routinely respond to franchisee inquiries and advise, in writing, that TPB was making all relevant management and strategic decisions for the franchise.***

112.    TPB also continued to disseminate ***updated versions*** the fraudulent FDD to the consumer public without updating, modifying or correcting the deceptive language contained in Item 3 of the FDD. Plaintiffs and other franchisees in the VaporFi system remained hopeful that TPB would address and correct ongoing issues with both franchise operations and what had been identified as the surreptitious theft of customer business and unfair competition through the Vaprofi.com website.

113.    Throughout 2018 and 2019, it became increasingly clear that TPB and IVG were each exercising overwhelming business control and dominance over the VaporFi franchise and the VaporFi Franchising LLC (an inactive entity that these Defendants attempted to dissolve) including the following:

a.    TPB consistently comingled resources, personnel and management between the various entities;

b.    TPB and its management made core business decisions affecting VaporFi franchisees, which was confirmed in writing by VP of Sales Courti Lewis;

c.   VaporFi "employees" were actually IVG employees who were also serving dual functions for TPB;

d.   VaporFi franchising remained undercapitalized and used solely as a repository for franchisees fees, royalties and other fees incidental to the business;

e.   Upon information and belief, infusing capital into the VaporFi franchise system to pay salaries and related costs to create the impression that the Vaporfi Franchising LLC entity continued to be a going concern; and,

f.   In 2019, TPB began acting against franchisees and developers and purporting to advance rights of the franchisor, despite the fact it was a non-signatory to any such agreement(s).

114.   In 2019, as the health of the franchise system continued to diminish, Plaintiffs and others repeatedly aired their grievances during system-wide conference calls and, each time, their concerns were met with false promises to address and fix system issues.

115.   After repeated efforts to rectify this issue by addressing these problems with TPB and IVG in good faith, TPB and IVG first promised to fix these issues but ultimately decided instead to send "notice of default" correspondence to Plaintiffs and certain other franchisees who had also complained about ongoing abuses in the franchise system.  The Notice of Default was sent **on Turning Point Brands, Inc. letterhead** and was also oddly accompanied by a Mutual Release and settlement offer from Turning Point Brands, Inc., offering certain compensation to Plaintiffs.  Plaintiffs rejected the settlement offer and responded to the Notice of Default. Attached hereto and made a part hereof as **Exhibit G** is a true copy of the July 29, 2019 Notice of Default sent to Plaintiffs by Turning Point Brands, Inc.

116.    Notably, and quite tellingly, the default notice sent to Plaintiffs was sent from TPB, not VaporFi Franchising LLC (which technically was inactive for nearly one year) and TPB purported to exercise its rights on behalf of the franchisor to issue a default.

117.    The Notice of Default correspondence further demonstrates that TPB has, for all intents and purposes, acted as the successor-in-interest to or alter ego of VaporFi Franchising LLC and IVG since the September 2018 acquisition.

118.    Additionally, in Summer 2019, the vaping industry and businesses that sold vaping products came under fire due to significant health concerns for consumers.  Rather than provide any guidance in the advent of a barrage of negative press and increased regulation and scrutiny at the federal level, TPB and IVG allowed the entire franchise system to flounder, while continuing to compete with franchisees for customer business via the vaporfi.com website.  In doing so, TPB and IVG purposefully diminished any remaining value in the goodwill of the system, damaging the business operation of Plaintiffs and other franchisees and/or developers.

## F.      Plaintiffs' Damages as a Result of their Fraudulent Inducement into Franchise System

119.    On September 20, 2019, in response to Turning Point Brands' Notice of Default, Plaintiffs sent a Demand for Rescission and Damages outlining its monetary investment in the franchise system through that date.  While the Demand was acknowledged by TPB's in-house counsel Don Becker, Esq. it was never responded to in writing.

120.    Damages as set forth in the Demand for Rescission through September 20, 2019 as of the date of that correspondence were as follows:

| Item | Expenditure |
|---|---|
| Initial Franchise and Development Fee | $69,000 |
| SBA Loan | $250,000, plus interest at rate of 8% per annum (buildout of first store) |
| Home Equity Loan (Center Point Bank) | $350,000, plus interest at rate of 7% per annum (ancillary costs and working capital) |
| Withdrawal of principal Monica Hinton 401K | $50,000 |
| Payroll since 2016 | $150,000 |
| Total Lease Payments to Date | $180,000 |
| | $36000 (marketing) |
| Credit Card | $90,000 plus interest |
| Legal Fees (to date) | $10,000 |
| **TOTAL** | **$1,185,000 (exclusive of interest)** |

121.    Since the September 2019 Demand for Rescission, Plaintiffs have incurred monetary damages in excess of $20,000 per month and have continued to incur attorneys' fees and costs.

122.    In February 2020, in response to Plaintiff's ongoing complaints regarding the illegal actions taken by its predecessor, TPB sent a "termination notice" to Plaintiffs, this time purporting to send the notice from the defunct VaporFi Franchising LLC entity.  This termination further damaged Plaintiffs and essentially rendered their franchise investment valueless.

28

## COUNT I
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## (AGAINST DEFENDANTS IVG, VAPORFI FRANCHISING LLC, MOLINA AND TPB)

123.     Plaintiffs incorporate by reference paragraphs 1 through 123 above as if fully set forth herein and further alleges as follows.

124.     Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, declares to be unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.24(1).

125.     The provisions of FDUTPA are to be liberally construed to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts and practices in the conduct of any trade or commerce. Fla. Stat. § 501.202(2).

126.     An act is unfair under FDUTPA when it offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *See Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2d DCA 2006). A deceptive act or practice under FDUTPA is a representation, **omission**, or other act or practice that is likely to mislead a consumer acting reasonably under the circumstances to the consumer's detriment. *See PNR, Inc. v. Beacon Prop. Mmgt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003).

127.     According to the definition of "violation of this part," under §501.203(3)(a) a violation of FDUTPA can occur when federal administrative rules promulgated by the Federal Trade Commission pursuant to the FTC act are violated.

128.      Defendants IVG, VaporFi Franchising LLC, Molina and TPB each created, used and/or disseminated an FDD that knowingly and intentionally failed to disclose at least four

(4) litigation matters that should have properly been disclosed pursuant to FTC Rule 436.  See Exhibits A, B, C and D.

129.     The failure to disclose the multiple litigations in VaporFi FDD by these Defendants was purposeful and designed to mislead the consumer public and prospective franchisees and investors.

130.     Plaintiffs are consumers under FDUPTA and are entitled to its protections. *See Fla. Stat. § 501.203(7); see also Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, No. 10-23869-CIV, 2012 WL 1570057, at *6 (S.D. Fla. May 12, 2012).

131.     Defendants IVG, VaporFi Franchising LLC, TPB, Molina and TPB have and continued been engaged in trade and commerce in the State of Florida and operated the VaporFi franchise business out of this State. These defendants have also sought to specifically harm consumers in Florida and throughout the United States in the execution of their fraudulent scheme.

132.     Plaintiffs have been injured by Defendants IVG, VaporFi Franchising LLC, TPB and Molina's unfair or deceptive practices, committed both individually and in concert, in the course of investing in a franchise business in which these defendants marketed and sold unlawfully from their Florida headquarters.

133.     After Plaintiffs entered into the franchise system, Defendants, IVG, Molina, VaporFi Franchising and TPB continued to act deceptively by purposefully steering Plaintiff's franchise store sales to its vaporfi.com website without properly compensating Plaintiffs or advising Plaintiffs of their true intentions to develop only their internet sales platform, to the exclusion and detriment of Plaintiffs and other franchisees and developers.

134.     The business practices of Defendants, IVG, Molina, VaporFi Franchising and

TPB and connection with the creation and dissemination of improper and inherently deceptive FDD to Plaintiffs and other consumers are unfair, deceptive, and unconscionable and constitute both *per se* and traditional violations of FDUPTA.  Violations of any law, statute, rule, or regulation that proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices constitute *per se* violations of FDUTPA. Fla. Stat. § 501.203(3)(c).

135.    By virtue of the foregoing, and consistent with the provisions of FDUTPA, Plaintiffs seeks: (a) damages for all amounts expended in connection with the acquisition of franchise territorial interests, franchise, royalties and other fees, and all costs incidental to the operation of their franchised business; (b) a declaratory judgment declaring that these Defendants' acts and practices are unfair and deceptive in violation of FDUTPA, (c) an order enjoining Defendants IVG, VaporFi Franchising and TPB from continuing to engage in such unfair and deceptive acts and practices, and (d) any other relief the Court deems just and proper.

**COUNT II**
**COMMON LAW FRAUD**
**(AGAINST DEFENDANTS IVG, VAPORFI FRANCHISING LLC, TPB, MOLINA, DARROW LAW FIRM AND FRANCHISE CREATOR)**

136.    Plaintiffs incorporate by reference paragraphs 1 through 123 as if fully set forth herein and further alleges as follows.

137.    Defendants IVG, VaporFi Franchising LLC, Molina, Darrow Law Firm and Franchise Creator  each took part, independently and in concert with each other, in the making of material misrepresentations and omissions of material fact in the FDD furnished to Plaintiffs, which were designed to induce, and did induce, Plaintiffs to rely on those misrepresentations and omissions and to invest in the VaporFi franchise system, in the absence of proper and complete disclosures.

31

138.    More specifically, despite being fully aware of VaporFi's FTC disclosure obligations, IVG and Molina, with the assistance of the Darrow Law Firm and Attorney Darrow, prepared an FDD that made purposeful omissions regarding at least (4) litigation related items involving allegations of consumer fraud and related malfeasance.

139.    Plaintiffs received and reviewed the VaporFi FDD which contained no information regarding the Molina lawsuits.  Plaintiffs were furnished a copy of the FDD by Kristy Pope, an associate of IVG who had previously been employed by Franchise Creator.

140.    Item 3 of the FDD received by Plaintiff indicated that "no litigation [was] required to be disclosed" despite the fact that multiple matters in which

141.    After assuming ownership and control of the franchise business, Defendant TPB, which has acted as the *de facto* franchisor and alter ego of VaporFi Franchising LLC and IVG, continued to disseminate various iterations of the VaporFi FDD that failed to disclose any information regarding the Molina litigations and did not advise Plaintiff or any existing franchisees of the existence of this information that had been improperly omitted from all previously issued iterations of the FDD.

142.    Upon information and belief, TPB learned of the existence of these lawsuits in 2018, yet purposefully failed to advise Plaintiff, any other franchisees or the consumer public, as it continued to sell franchises.

143.    Reference to these items, each material facts as determined by the FTC, was purposefully omitted in order to induce Plaintiffs and other consumers to invest in the franchise system without sufficient knowledge regarding the prior actions and legal history of its executive principal.

144.    During the relevant time period, Defendant Franchise Creator acted as an

authorized agent of IVG and Molina from the inception of the franchise business, and worked collaboratively with the Darrow Law Firm and Attorney Darrow to sell franchises, negotiate with prospective franchisees and disseminate copies of the VaporFi FDD.

145.    The representations contained in the FDD were false at the time of their making, purposefully concealed material facts required to be disclosed by the FTC and were made with the intent to induce United to make payments on the claims.

146.    Defendants failed to disclose the aforementioned material information Plaintiffs and similarly situated franchisees and investors, despite knowing that its failure to disclose would induce Plaintiffs to act contrary to how it would act were it provided the material information.

147.    In failing to disclose the aforementioned material information to Plaintiffs, these defendants acted in bad faith. IVG, VaporFi, Molina, the Darrow Firm, Franchise Creator and later TPB intended for Plaintiffs to rely on the aforementioned misrepresentations and omissions in order to induce Plaintiffs to make an initial investment and continue to invest in the franchise system.

148.    Plaintiffs, having been provided a copy of the FDD as the primary means of disclosure for their franchise investment, which they were told was drafted by an attorney, reasonably relied on the aforementioned misrepresentations and omissions contained therein and made a decision to invest more than one million dollars in the franchise system on this basis.

149.    After Plaintiffs entered into the franchise system, Defendants, IVG, Molina, VaporFi Franchising and TPB continued to act deceptively by purposefully steering Plaintiff's franchise store sales to its vaporfi.com website without properly compensating Plaintiffs or advising Plaintiffs of their true intentions to develop only their internet sales platform, to the

exclusion and detriment of Plaintiffs and other franchisees and developers.

150.     As a direct and proximate result of these Defendants' misrepresentations and omissions, Plaintiffs have been damaged in a substantial amount to be determined at trial, exclusive of interest and costs.

151.     By virtue of the foregoing, Plaintiffs are entitled to an award of compensatory and punitive damages, together with interest and costs and any other relief the Court deems just and proper.

## COUNT III
## NEGLIGENT MISREPRESENTATION
## (AGAINST DEFENDANTS, IVG, VAPORFI FRANCHISING LLC, TPB, MOLINA, DARROW LAW FIRM AND FRANCHISE CREATOR)

152.     Plaintiffs incorporate by reference paragraphs 1 through 123 as if fully set forth herein and further alleges as follows.

153.     Defendants IVG, VaporFi Franchising LLC, Molina, Darrow Law Firm and Franchise Creator each took part in the making of material misrepresentations and omissions of material fact in the FDD furnished to Plaintiffs, which were designed to induce, and did induce, Plaintiffs to rely on those misrepresentations and omissions and to invest in the VaporFi franchise system, in the absence of proper and complete disclosures.

154.     More specifically, despite being fully aware of VaporFi's FTC disclosure obligations, IVG and Molina, with the assistance of the Darrow Law Firm and Attorney Darrow, prepared an FDD that made purposeful omissions regarding at least (4) litigation related items involving allegations of consumer fraud and related malfeasance.

155.     At all relevant times, Defendants IVG, VaporFi Franchising LLC, Molina, Darrow Law Firm and Franchise Creator knew or should have known these items should have been disclosed and had a duty to properly provide such disclosures to Plaintiff.

156.     In May 2016, Plaintiffs received and reviewed the March 28, 2016 version of the FDD which contained no information regarding the Molina lawsuits.  Plaintiffs were furnished a copy of the FDD by Kirsty Pope, an associate of IVG who had previously been employed by Franchise Creator.  Item 3 of the FDD received by Plaintiff indicated that "no litigation [was] required to be disclosed" despite the fact that multiple matters in which

157.     After assuming ownership and control of the franchise business, Defendant TPB, which has effectively acted as the de facto franchisor and alter ego of VaporFi Franchising LLC and IVG, continued to disseminate various iterations of the VaporFi FDD that failed to disclose any information regarding the Molina litigations and did not advise Plaintiff or any existing franchisees of the existence of this information that had been improperly omitted from all previously issued iterations of the FDD.  Upon information and belief, TPB learned of the existence of these lawsuits in 2018, yet failed to advise Plaintiff, any other franchisees or the consumer public, as it continued to sell franchises.

158.     Reference to these items, each material facts as determined by the FTC, was omitted in order to induce Plaintiffs and other consumers to invest in the franchise system without sufficient knowledge regarding the prior actions and legal history of its executive principal.

159.     During the relevant time period, Defendant Franchise Creator acted as an authorized agent of IVG and Molina from the inception of the franchise business, and worked collaboratively with the Darrow Law Firm and Attorney Darrow to sell franchises, negotiate with prospective franchisees and disseminate copies of the VaporFi FDD.

160.     The representations contained in the FDD were false at the time of their making, purposefully concealed material facts required to be disclosed by the FTC and were made with the intent to induce United to make payments on the claims.

161.     Defendants failed to disclose the aforementioned material information Plaintiffs and similarly situated franchisees and investors, despite knowing that its failure to disclose would induce Plaintiffs to act contrary to how it would act were it provided the material information.

162.     In failing to disclose the aforementioned material information to Plaintiffs, Defendants IVG, VaporFi, Molina, the Darrow Firm, Franchise Creator  and later TPB intended for Plaintiffs to rely on the aforementioned misrepresentations and omissions in order to induce Plaintiffs to make an initial investment and continue to invest in the franchise system and breached their duty to ensure that the proper disclosures were being made.

163.     Plaintiffs, having been provided a copy of the FDD as the primary means of disclosure for their franchise investment, which they were told was drafted by an attorney, reasonably relied on the aforementioned misrepresentations and omissions contained therein and made a decision to invest more than one million dollars in the franchise system on this basis.

164.     As a direct and proximate result of these Defendants' intentional and/or grossly negligent misrepresentations and omissions, Plaintiffs have been damaged in a substantial amount to be determined at trial, exclusive of interest and costs.

165.     By virtue of the foregoing, Plaintiffs are entitled to an award of compensatory and punitive damages, together with interest and costs and any other relief the Court deems just and equitable.

## COUNT IV
## DECLARATORY JUDGMENT: LIABILITY AS SUCCESSOR/DE FACTO MERGER AND ALTER EGO LIABILITY
## (AGAINST DEFENDANTS IVG and TPB)

166.      Plaintiffs incorporate by reference paragraphs 1 through 123 as if fully set forth herein and further alleges as follows.

36

167.     Between Plaintiffs' entry into the VaporFi franchise system in 2016 and its sale to TPB in September 2018, IVG and Molina exercised total dominion and control over the VaporFi Franchising LLC entity and routinely co-mingled assets, employees and corporate resources to the entity, which was formed solely to act as a repository for franchise fees, royalties and other fees.

168.     Molina and IVG funded the undercapitalized VaporFi Franchising LLC entity and used IVG personnel to serve dual roles as VaporFi officers/employees.  Molina would also routinely comingle funds between the entities, i.e., using VaporFi franchise reviews to support IVG events.

169.     Molina also infused capital from either himself of IVG to fund certain VaporFi franchise operations without regard to corporate formalities.

170.     No effort was ever made to hide IVG's control over the business or its use of corporate resources to run the VaporFi operation. In fact, Molina gave public statements as early as 2017 describing the franchise system as being "backed" by IVG and its management.

171.     Upon the sale of IVG and the franchise system to TPB, Molina, as a representative of IVG and VaporFi contemporaneously sought to dissolve the VaporFi entity.

172.     Since September 2018, the VaporFi entity has remained inactive with no effort by IVG or TPB to revive the entity or restore it to active status.

173.     Neither VaporFi Franchising, IVG, TPB or Molina, or any of their representatives, ever advised Plaintiffs or any other developer, franchisee or investor that the entity had been dissolved or that it was inactive.

174.     Plaintiffs and other developers, franchisees and investors were always led to believe that the entity remained distinct, open and operating through the sale, and, furthermore,

remained capitalized and a going concern.

175.      Plaintiffs relied upon this representation to continue to deal with VaporFi in good faith and attempt to resolve numerous business issues including the theft of sales.

176.      Since September 2018, TPB and IVG have expressly or impliedly assumed the liabilities of VaporFi Franchising LLC including the obligation to make payment or enter into settlement agreements with outgoing franchisees.

177.      TPB assumed control of the day to day operations of VaporFi, including the comingling of assets, employees and other resources and has made day to day operational decisions for the franchise.

178.      While disclaiming responsibility for the Molina regime's actions prior to the sale, TPB since acquiring VaporFi franchise and IVG has run the business as a mere continuation of the predecessor.

179.      TPB has also asserted the rights of the franchisor to default or terminate franchisees buy sending both notices of default and termination to franchisees.

180.      TPB has also attempted to broker "settlement" arrangements with Plaintiffs and other developers, franchisees and investors within the franchise system.

181.      TPB's undertaking of the role of franchisor, in tandem with IVG, constitutes the assumption of obligations ordinarily necessary for the uninterrupted continued business operations of the VaporFi franchise.

182.      The sale of VaporFi franchising business to TPB has resulted in a *de facto* merger between the entities.

183.      Plaintiffs seeks a declaratory judgment declaring that (i) TPB and IVG have each assumed the liability of VaporFi Franchising LLC through the exercise of dominion and

control  over the VaporFi franchise business and the comingling of assets and resources of the various business; and (ii) that the sale of the VaporFi Franchising business to TPB constitutes a de facto merger under Florida law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

a)   compensatory damages in an amount to be determined at trial, for the Defendants IVG, Molina, VaporFi Franchising LLC and TPB's violations of FDUTPA;

b)   compensatory damages in an amount to be determined at trial for the fraud committed by all named Defendants;

c)   compensatory damages in an amount to be determined at trial for the negligent misrepresentations made by all named Defendants;

d)   punitive damages;

e)   rescission of Plaintiff's development agreement and franchise agreement with VaporFi Franchising LLC or its affiliates;

f)   a declaration that the Agreement is void *ab initio* for violations of FDUTPA;

g)   a declaration that Defendants IVG and TPB have acted as the alter ego of Defendant VaporFi Franchising LLC and are liable for its debts;

h)   a declaration that the sale of the franchise business of VaporFi Franchising LLC to TPB constituted a de facto merger and that Defendants IVG and TPB are liable for its debts;

i)   enjoining Defendants TPB and IVG from taking any further actions in violation of FDUTPA;

j)   enjoining Defendants from making any additional payouts to Molina pursuant to the terms of the September 2018 sale of VaporFi Franchising LLC;

k)    all costs of this action, including reasonable attorneys' fees and costs; and,

l)    such other and further relief as this Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues so triable herein.


April 7, 2020                                 Respectfully submitted,


                                              /s/ Matt Person
                                              **MATT PERSON, ESQUIRE**
                                              **Attorney for Plaintiff**
                                              Florida Bar 103754
                                              9560 NW 41 Street
                                              Doral FL 33178
                                              Telephone (305) 640-5754
                                              Fax (888) 602-4190