UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-21476-CIV-LENARD

WALTER HINTON and
MONICA HINTON,

     Plaintiffs,

v.

TURNING POINT BRANDS, INC.,
NICOLAS MOLINA,
KENNETH F. DARROW, P.A.,
VAPORFI FRANCHISING LLC,
INTERNATIONAL VAPOR GROUP INC.,
DCV FRANCHISE GROUP,
JOHN DOES 1-10, and
ABC COMPANIES 1-10,

     Defendants.

_____/

**OMNIBUS ORDER GRANTING DEFENDANT VAPORFI FRANCHISING, LLC'S MOTION TO COMPEL ARBITRATION AND STAY CASE (D.E. 16), GRANTING DEFENDANT TURNING POINT BRANDS, INC.'S AND DEFENDANT INTERNATIONAL VAPOR GROUP, INC.'S MOTION TO STAY PENDING ARBITRATION (D.E. 14), GRANTING DEFENDANT NICOLAS MOLINA'S MOTION TO STAY PENDING ARBITRATION (D.E. 47), DENYING WITHOUT PREJUDICE DEFENDANT DCV FRANCHISE GROUP'S MOTION TO DISMISS (D.E. 58), AND STAYING AND ADMINISTRATIVELY CLOSING CASE**

**THIS CAUSE** is before the Court on Defendant VaporFi Franchising LLC's ("VaporFi") Motion to Compel Arbitration and Dismiss or Stay Case, (D.E. 16), filed June 4, 2020.  Plaintiffs Walter Hinton and Monica Hinton ("Plaintiffs") filed a Response on June 29, 2020, (D.E. 20), to which VaporFi filed a Reply on July 6, 2020, (D.E. 22).

Also before the Court is Defendant Turning Point Brands, Inc.'s ("Turning Point") and Defendant International Vapor Group, Inc.'s ("IVG") Motion to Stay Pending Arbitration, (D.E. 14), filed June 4, 2020.  Plaintiffs filed a Response on June 29, 2020, (D.E. 19), to which Turning Point and IVG filed a Reply on July 6, 2020, (D.E. 21).

Also before the Court is Defendant Nicolas Molina's ("Molina") Motion to Stay Pending Arbitration, (D.E. 47), filed September 8, 2020.  Plaintiffs filed a Response on September 22, 2020, (D.E. 52), to which Molina filed a Reply on September 29, 2020, (D.E. 53).

Also before the Court is Defendant DCV Franchise Group's ("DCV") Motion to Dismiss Amended Complaint, (D.E. 58), filed October 23, 2020.  Plaintiffs filed a Response on November 12, 2020.  (D.E. 63.)

Upon review of the Motions, Responses, Replies, and the record, the Court finds as follows.[1]

## I.    Background

At least as far back as 2016, VaporFi was a business that provided qualified third-parties opportunities to own and operate a franchise business offering electronic cigarettes, e-liquids, nicotine, vaporizers, accessories, and other related items under the VaporFi name, trademark, and system.  (See Am. Comp., D.E. 10 ¶¶ 34, 45; D.E. 16 at 3; D.E. 10-7 at 4-7.)  The Amended Complaint alleges that IVG owns VaporFi, (D.E. 10 ¶ 31), and

---

[1]       The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (See Am. Compl. ¶ 42.)

that Turning Point owns IVG and VaporFi, (<u>id.</u> ¶ 32).  The Amended Complaint further alleges that Molina is the former CEO of IVG and VaporFi.  (<u>Id.</u> ¶ 33.)

In 2016, Plaintiffs began discussing VaporFi franchise opportunities through IVG's agent/consultant Kirsty Pope.  (<u>Id.</u> ¶ 44.)  Pope "aggressively solicited Plaintiffs to invest in the business, not just as a franchisee but also as a developer."  (<u>Id.</u>)  "A significant incentive for Plaintiffs to join IVG's franchise in the role of a 'developer' was the purported business acumen, reputation, and expertise of its then-Chief Executive Officer (CEO), Defendant, Molina."  (<u>Id.</u> ¶ 48.)  Molina represented himself as being a successful entrepreneur who understood the vaping business and purported to have established a highly successful online purchasing platform that had strong sales of both IVG's own proprietary products and other vaping products.  (<u>Id.</u> ¶ 49.)  Plaintiffs were "unaware of, and, in fact, kept completely in the dark about, Molina's serious prior legal issues, including multiple lawsuits that alleged that Molina, individually and in concert with others, had purposefully deceived the consumer public in various other businesses in which he was a principal or owner."  (<u>Id.</u> ¶ 50.)

IVG and Molina developed (and annually updated) a Franchise Disclosure Document ("FDD") to furnish to prospective franchisees.  (<u>Id.</u> ¶ 5.)  IVG and Molina retained the services of Kenneth F. Darrow, P.A. and its principal, Kenneth Darrow, Esq. to prepare the FDD.  (<u>Id.</u> ¶ 6.)  Darrow prepared the FDD based upon information provided by IVG and Molina.  (<u>Id.</u>)  The Amended Complaint alleges that the FDD failed to disclose multiple lawsuits alleging fraud against Molina even though the Federal Trade Commission ("FTC") requires disclosure in a FDD of material legal actions against individuals working

for a franchisor with significant management responsibilities.   (Id. ¶¶ 6, 60, 63.) Specifically, the FTC requires Item 3 of the FDD to disclose pending litigation and related matters. (Id. ¶ 60.)  Item 3 of the March 28, 2016 version of the FDD received by Plaintiffs states: **"No litigation is required to be disclosed in this item."**  (Id. ¶ 61.)

During the course of the negotiations, IVG and VaporFi recommended that Plaintiffs hire DCV as a consultant that could help Plaintiffs develop funding strategies and arrange financing in connection with their VaporFi franchise. (Id. ¶ 87.)  In September 2016, DCV and Plaintiffs entered into a contract under which DCV prepared a "Business Plan" that was ultimately submitted to various third-party lenders. (Id. ¶¶ 88-89.)  The Business Plan does not mention the lawsuits involving Molina. (Id. ¶ 91.)  The Business Plan "grossly underestimated the amount of operating expenses that would ultimately be incurred in the operation of the business and overstated revenues . . . ." (Id. ¶ 96.)

On September 9, 2016, Plaintiffs entered into a Development Agreement with VaporFi.  (D.E. 16-1 at 49-69.)  The Development Agreement contained the following Dispute Resolution clause:

> The parties hereby agree to submit any claim or dispute, disagreement, or matter pertaining to interpretation of this Agreement, this Agreement, the breach thereof, the relationship between Franchisor and Developer or any other issue or dispute under this Agreement (the "Dispute"), except as otherwise specified in this Section . . . to binding arbitration before the American Arbitration Association in Miami, Florida. . . .

(Id. at 61.)  On September 20, 2016, Plaintiffs entered into a Franchise Agreement with VaporFi.  (Id. at 2-48.)   The Franchise Agreement contained the following Dispute Resolution clause:

4

> The parties hereby agree to submit any claim or dispute, disagreement, or matter pertaining to interpretation of this Agreement, or issues arising out of or relating to the offer and sale of the franchise, this Agreement, the breach thereof, the relationship between Franchisor and Franchisee or any other issue or dispute under this Agreement (the "Dispute"), except as otherwise specified . . . to binding arbitration before the American Arbitration Association in Miami, Florida.

(Id. at 44.)  The Agreements granted Plaintiffs the rights to open seven VaporFi Franchise locations, and the exclusive rights to open locations in Fulton County, Cobb County, Dekalb County, and Clarke County, Georgia.  (Am. Compl. ¶¶ 53-54.)

"Soon after joining the franchise system, Plaintiffs learned that IVG, Molina and the various other owners of the VaporFi system had no actual intention to build a network of physical franchise locations and were, instead, using Plaintiffs' and other similarly situated franchisees' efforts to develop a local clientele in their respective territory(/ies) as a means to build the VaporFi online platform and related business."  (Id. ¶ 99.)  Plaintiffs and other franchisees were falsely promised a percentage of sales from products sold online to customers within their protected territory.  (Id. ¶¶ 101-02.)

In September 2018, Turning Point purchased IVG and the VaporFi franchise for more than $20 million.  (Id. ¶¶ 106-07.)  Molina remained associated with IVG and VaporFi as a compensated consultant.  (Id. ¶ 108.)  On or about the same day that Turning Point purchased IVG, Molina and/or others sought to dissolve VaporFi.  (Id. ¶ 109.)  Since then, VaporFi has remained "'inactive,' undercapitalized, and has effectively ceased to be a going concern."  (Id. ¶ 110.)  Nevertheless, IVG and Turning Point have presented VaporFi as a fully-functioning, operational business to franchisees, developers, investors, and the general public.  (Id. ¶ 111.)

The Amended Complaint alleges that prior to the acquisition of IVG, Turning Point learned, or should have learned, of the lawsuits against Molina.  (Id. ¶¶ 113-14.)  Turning Point continued to disseminate updated versions of the FDD without including the lawsuits against Molina.  (Id. ¶ 117.)

In 2019, Plaintiffs discovered the existence of multiple lawsuits against Molina.  (Id. ¶ 121.)  After complaining about Turning Point's failure to disclose the lawsuits, Turning Point sent Plaintiffs a "Notice of Default."  (Id. ¶ 122.)  On September 20, 2019, in response to the Notice of Default, Plaintiffs sent a Demand for Rescission and Damages outlining its monetary investments and other expenditures related to the franchise system.  (Id. ¶¶ 128-29.)

On November 2, 2019, Plaintiffs filed a Demand for Arbitration with the American Arbitration Association, naming, inter alia, VaporFi, Turning Point, and IVG as respondents.  (D.E. 16 at 4.)  Plaintiffs asserted that:

> 1) Respondents fraudulently induced Claimants to invest in the Vaporfi franchise system, as franchisees, by purposeful [sic] failing to make proper Item 3 disclosures in their Franchise Disclosure Document, in violation of FTC Rule 436, Florida law and Georgia law; 2) Respondents breached the parties' franchise agreement in multiple ways and abused their discretion, in bad faith, in making detrimental changes to Vaporfi's business model; and 3) Each of the named Respondents (including Turning Point Brands) is liable as an alter-ego of the franchisor.

(D.E. 16-1 at 71.)  On December 11, 2019, the respondents filed an Answer Statement in which Turning Point and IVG objected to the AAA's jurisdiction over the dispute with respect to them because they were not parties to the Development Agreement or Franchise Agreement, and because they are not alter egos of VaporFi.  (Id. at 79.)  The arbitration

was dismissed when Plaintiffs failed to remit payment within ninety days of the date they filed the Demand for Arbitration, as required by the AAA rules.  (D.E. 16 at 5.)

In February 2020, Turning Point sent a "Termination Notice" to Plaintiffs, "purporting to send the notice from the defunct VaporFi Franchising, LLC entity."  (Id. ¶ 131.)

On April 7, 2020, Plaintiffs filed this lawsuit.  (D.E. 1.)  On June 1, 2020, Plaintiffs filed the operative Amended Complaint against Turning Point, IVG, VaporFi, Molina, DCV, Kenneth F. Darrow, P.A., and unnamed John Does and ABC Companies.  (D.E. 10.) Plaintiffs have abandoned their claims against Kenneth F. Darrow, P.A.[2]  (See D.E. 51.) The Amended Complaint contains the following claims:

- Count I: Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") against Turning Point, IVG, VaporFi, and Molina, (D.E. 10 ¶¶ 132-44);

- Count II: Common law fraud against Turning Point, IVG, VaporFi, Molina, and DCV, (id. ¶¶ 145-59);[3]

---

[2]    According to Plaintiffs, Kenneth F. Darrow, P.A. is no longer in business and the law firm's principal, Mr. Darrow, is deceased.  (See D.E. 27 at 4.)  Plaintiffs wished to proceed against the law firm's insurance company, (see id.); however, after Kenneth F. Darrow, P.A. failed to respond to the Amended Complaint, Plaintiffs failed to comply with the Court's order to file a Motion for Default.  (See D.E. 48.)  Consequently, on September 22, 2020, the Court entered an Order dismissing the case as to Kenneth F. Darrow, P.A.  (D.E. 51.)

[3]    Count II also names the Darrow law firm but that claim has been abandoned.  See supra Note 2.

- <u>Count III</u>: Negligent misrepresentation against Turning Point, IVG, VaporFi, Molina, and DCV, (<u>id.</u> ¶¶ 160-74);[4]

- <u>Count IV</u>: Declaratory judgment as successor/de facto merger and alter ego liability against Turning Point and IVG, (<u>id.</u> ¶¶ 175-93).

VaporFi filed the instant Motion to compel arbitration pursuant to the Dispute Resolution Clauses contained in the Franchise Agreement and Development Agreement, and to either stay or dismiss this case pending the completion of arbitration.  (D.E. 16.)

Turning Point and IVG filed a Motion to stay the case pending completion of the arbitration between Plaintiffs and VaporFi.  (D.E. 14.)  Molina also filed a Motion to stay the case pending completion of the arbitration between Plaintiffs and VaporFi.  (D.E. 47.)

DCV filed a motion to dismiss the Amended Complaint for failure to state a claim. (D.E. 58.)

## II.     Legal Standards

### a)      Compelling arbitration

The Federal Arbitration Act ("FAA") requires a court to stay a lawsuit and to compel arbitration upon a showing that "(a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement."  <u>Lambert v. Austin Ind.</u>, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4).  The purpose of the FAA is to "ensure judicial enforcement of privately made agreements to arbitrate."  <u>Dean Witter</u>

---

[4]     Count III also names the Darrow law firm but that claim has been abandoned.  <u>See</u> <u>supra</u> Note 2.

Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985).  Congress enacted the FAA to overcome judicial resistance to arbitration and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner.  Vaden v. Discover Bank, 556 U.S. 49, 58 (2009).

However, "[w]hile there is a liberal federal policy favoring arbitration agreements, 'the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate.'"  Becker v. Davis, 491 F.3d 1292, 1298 (11th Cir. 2007) (quoting Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004)); Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x 782, 785 (11th Cir. 2008) ("[P]arties cannot be forced to submit to arbitration if they have not agreed to do so.") (internal quotation omitted).

"Consequently, when considering whether claims are subject to an arbitration provision, a district court must undertake a two-step inquiry."  Mims v. Global Crdeit and Collection Corp., 803 F. Supp. 2d 1349, 1353 (S.D. Fla. 2011) (citing Scott v. EFN Invs., LLC, 312 F. App'x 254, 256 (11th Cir. 2009) (citing Klay, 389 F.3d at 1200); Patriot Mfg., Inc. v. Dixon, 399 F. Supp. 2d 1298, 1300 (S.D. Ala. 2005) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-28 (1985))).  "The first step is to determine whether the parties agreed to arbitrate the dispute, which is a determination made by reference to the ''federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].''"  Id. (quoting Mitsubishi Motors, 473 U.S. at 626 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24)).  "If the court concludes that the parties did agree to arbitrate the dispute in question, then the second step is to consider whether legal constraints external to the parties' agreement foreclose the

arbitration of those claims." Id. (citing Patriot Mfg., 399 F. Supp. 2d at 1301). "A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." Inetianbor v. CashCall, Inc., 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013) (citing Bess v. Check Express, 294 F.3d 1298, 1306-07 (11th Cir. 2002)).

**b)** **Staying case pending arbitration**

Although a nonsignatory to the arbitration agreement may not invoke the mandatory stay provision contained in Section 3 of the FAA, "a district court has discretion to stay third party litigation involving common questions of fact within the scope of an arbitration agreement to which the third party is not a signatory." Asahi Glass Co., Ltd. v. Toledo Eng'g Co., Inc., 262 F. Supp. 2d 839, 844 (N.D. Ohio 2003) (citing AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 242 F.3d 777, 782 (8th Cir. 2001); IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524, 530 (7th Cir. 1996); Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 441 (2d Cir. 1964)); see also Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991). Indeed, the Supreme Court has recognized that when a lawsuit names both signatories and nonsignatories to an arbitration agreement, "[i]n some cases . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." Moses H. Cone Mem'l Hosp., 460 U.S. at 20 n.3. Although it does not appear that the Eleventh Circuit has specifically addressed this precise issue in a published opinion, the Fifth Circuit has stated that if a suit against a nonsignatory to the arbitration agreement is based upon the

10

same operative facts and is inherently inseparable from claims against a signatory, the trial court has discretion to grant a stay if the suit would undermine the arbitration proceedings and thwart the federal policy in favor of arbitration. Hill v. G E Power Sys., Inc., 282 F.3d 343, 348 (5th Cir. 2002).

## III.   Discussion

The Court will first address VaporFi's Motion to Compel Arbitration, (D.E. 16), and because the Court finds that Plaintiffs must arbitrate their claims against VaporFi, the Court will then address whether a stay pending the completion of arbitration is merited with respect to Plaintiffs' claims against the remaining Defendants.

### a.    Motion to Compel Arbitration

VaporFi moves to compel arbitration of Plaintiffs claims against VaporFi pursuant to the Dispute Resolution Clauses contained in the Franchise Agreement and Development Agreement. (D.E. 16 at 7.) It argues that the Franchise Agreement and Development Agreement are valid agreements and that Plaintiffs claims against VaporFi are within the scope of the arbitration clauses contained in those agreements. (Id. at 7-8.) In particular, VaporFi notes that the arbitration clause in the Franchise Agreement applies to "issues arising out of or relating to . . . this Agreement[,]" and argues that courts broadly interpret such language. (Id. at 7 (citing Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130–31 (9th Cir. 2000); Gregory v. Electro-Mech. Corp., 83 F.3d 382, 384-86 (11th Cir. 1996)).) As such, it argues that the court should stay or dismiss the case pending completion of arbitration. (Id. at 8-9.)

11

Plaintiffs appear to argue that their claims against VaporFi relate solely to the Development Agreement because they are based primarily on misrepresentations that led them to enter into the Development Agreement.  (D.E. 20 at 1.)  They argue that the Development Agreement's arbitration clause does not contain the "arising out of language," and limits arbitrable claims to breach and other "issues or disputes under the agreement."  (Id. at 4-5.)

VaporFi argues that "the Franchise Agreement's arbitration clause is broad and clearly covers all of the claims asserted against VaporFi."  (D.E. 22 at 2.)  As such, it argues that it is irrelevant whether the claims are also covered by the Development Agreement's arbitration clause.  (Id.)  Regardless, VaporFi argues that the claims are covered by the Development Agreement's arbitration clause which broadly applies to claims "pertaining to . . . this Agreement, the relationship between [the parties] [and] any other issue or dispute under this Agreement . . . ."  (Id. at 2-3.)

First, Plaintiffs do not dispute, and the Court finds, that Plaintiffs entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles—and specifically, the arbitration agreements contained in both the Franchise Agreement and the Development Agreement.

Second, the Court finds that the claims before the Court fall within the scope of the Franchise Agreement's arbitration clause irrespective of whether they fall within the scope of the Development Agreement's arbitration clause.   The Franchise Agreement's arbitration clause broadly applies to, inter alia, "issues arising out of or relating to the offer and sale of the franchise, this Agreement, the breach thereof, the relationship between

12

Franchisor and Franchisee or any other issue or dispute under this Agreement[.]"  (D.E. 16-1 at 44.)  The first thirty pages of the Amended Complaint describe how Plaintiffs were allegedly fraudulently induced into investing in the VaporFi franchise.  (D.E. 10 ¶¶ 1-131.) The prayer for relief seeks, inter alia, "rescission of Plaintiff's . . . franchise agreement with VaporFi Franchising, LLC . . . ."  (Id. at 42.)   Plaintiff's claims against VaporFi indisputably arise out of and are related to the Franchise Agreement and/or the relationship between Plaintiffs and VaporFi; therefore, Plaintiffs claims fall within the Franchise Agreement's broad arbitration clause.[5]  See Scherck v. Alberto-Culver Co., 417 U.S. 506, 519-20 (1974) (holding that claims alleging that the defendant's fraudulent misrepresentations induced the plaintiff into purchasing three businesses and the rights to trademarks were covered by an arbitration clause applicable to claims that "shall arise out of this agreement or breach thereof"); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395,  (1967) (holding that a claim of "fraud in the inducement" of an agreement generally is covered by a "broad" arbitration clause applicable to claims "arising out of or relating to this agreement"); Gregory, 83 F.3d at 386 (holding that arbitration clause applicable to claims "arising []under" an agreement should be broadly construed).

Finally, the Court finds that there are no legal constraints external to the parties' agreement that foreclose the arbitration of Plaintiffs' claims against VaporFi.  Therefore, VaporFi's Motion to Compel Arbitration and Stay the Case is granted.

---

[5]        In fact, Plaintiffs' Demand for Arbitration specifically alleged that "Respondents breached the parties' franchise agreement . . . ."  (D.E. 16-1 at 71.)

The Court now turns to whether a stay of the case as to the remaining Defendants is merited.

**b.      Motions to Stay Pending Arbitration**

Turning Point and IVG argue that "[w]hile the arbitration between the Hintons and VaporFi is pending, the Court should also stay the action with respect to all claims asserted against Turning Point and IVG, because the claims against these Defendants are based on the same operative facts as the claims against the Hintons, and the outcome of the arbitration may preclude Turning Point's and IVG's alleged liability as alter egos of VaporFi." (D.E. 14 at 2-3.) They argue that

> [t]he issues raised by Plaintiff against Turning Point and IVG are intertwined with the Agreements and VaporFi's actions relating to the Agreements. The claims alleging violation of the FDUTPA, common law fraud, and negligent misrepresentation are interrelated and arise from the alleged failure by VaporFi to make certain disclosures in the FDD. The FDUTPA, fraud and negligent misrepresentation claims against Turning Point and IVG are derivative and subservient to these claims against VaporFi. In the interest of judicial economy, these claims against Turning Point and IVG should be stayed pending the arbitration of the same claims against VaporFi.

(Id. at 6.) They further argue that "[b]ecause Turning Point's and IVG's potential liability derives from the conduct or potential liability of VaporFi, the signatory to the Agreements, Turning Point and IVG are entitled to a stay pending arbitration." (Id. (citing Hudson Glob. Res. Mgmt., Inc. v. Beck, No. 805CV1446T27TBM, 2006 WL 1722353, at *6 (M.D. Fla. June 20, 2006)).)

> In the event that VaporFi prevails in arbitration, Plaintiffs would have no claim against Turning Point and IVG, because the grounds on which Plaintiffs seek to hold Turning Point and IVG independently liable are under

14

> an alter ego theory of liability.[6] If the arbitration proceedings result in a finding of no liability against VaporFi for violation of the FDUTPA, common law fraud, and negligent misrepresentation, the alter ego theory of liability must also fail, which would result in no liability for Turning Point and IVG.

(Id. at 6-7 (footnote in original) (citing Post Tensioned Eng'g Corp. v. Fairways Plaza Assocs., 429 So. 2d 1212 (Fla. Dist. Ct. App. 1983)).)  With respect to the declaratory judgment claim in Count IV, Turning Point and IVG argue that "[i]f the underlying claims against VaporFi are resolved in VaporFi's favor at arbitration, and VaporFi is not found to be liable for violation of the FDUTPA, common law fraud, or negligent misrepresentation, the Hintons' claims that Turning Point and IVG are alter egos of VaporFi will be moot." (Id. at 7.)

Similarly, Molina argues that the Court should stay Plaintiffs' claims against him pending arbitration between Plaintiffs and VaporFi because

> Plaintiffs' claims against Molina are identical to and based on the same operative facts as the claims against VaporFi.  Plaintiffs' claim against Molina for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is dependent on the outcome of arbitration. And the outcome of Plaintiffs' negligent misrepresentation and fraud claims against VaporFi in arbitration likely would impact the outcome of the same claims against Molina.

---

[6]     Any claims the Hintons allege against Turning Point and/or IVG which occurred following the Hintons' execution of the Agreements are not germane to their claims because the Hintons are alleging fraud in the inducement.  See Amended Complaint.  Under Florida law, where a plaintiff claims fraud in the inducement, allegations of misrepresentations after the agreement is signed are irrelevant to the fraud in the inducement claim.  See, e.g., Merriman v. Convergent Bus. Sys., Inc., No. CIV. A. 90-30138-LAC, 1993 WL 989418, at *9 n. 7 (N.D. Fla. June 23, 1993) ("Because H & R Block's fraud and DTPA claims are all in the nature of claims for fraud in the inducement, alleging that H & R Block would not have purchased the software but for CPAS's alleged misrepresentations and omissions, the Court considers the alleged misrepresentations made after the Agreement was signed to be irrelevant.")

(D.E. 47 at 1-2.)   For example, "if Plaintiffs are unsuccessful in their claims against VaporFi for fraud and negligent misrepresentation, that would undermine the same claims against Molina."  (Id. at 4.)

> Like the FDUPTA [sic] claim, the claims against Molina and VaporFi for fraud and negligent misrepresentation arise from the same operative facts, namely the alleged omissions in the FDD. Molina's relation to those claims stem solely from his role as VaporFi's CEO. See, e.g., Compl. ¶¶ 83, 147. Accordingly, if the arbitrator finds VaporFi not liable for fraud and negligent misrepresentation, Plaintiffs likely could not succeed in proving that Molina is liable for his alleged participation in VaporFi's omissions. Thus, a stay of these claims against Molina is also appropriate.

(Id. (citing Global Tel*Link Corp. v. Scott, 652 F. Supp. 2d 1240, 1248 (M.D. Fla. 2009); Fusilamp, LLC v. Littlefuse, Inc., CASE NO. 10-20528-CIV-ALTONAGA/Brown, 2010 WL 11504721, at *4 (S.D. Fla. Sept. 9, 2010)).)  He further argues that Plaintiffs will not be prejudiced by the stay.  (Id. at 5.)

Plaintiffs argue that the actions giving rise to their claims against Turning Point and IVG "preceded their entry into any agreement with [VaporFi]" and are not derivative of their claims against VaporFi.  (D.E. 19 at 3.)  As such, they argue that the claims against these Defendants may advance.   (Id. at 5-10.)  Plaintiffs further argue that a stay would result in "potential prejudice" to them "because a substantial likelihood exists that additional corporate restructuring may take place for the sole purpose of avoiding and evading responsibility of one or both of these entities."  (Id. at 4.)

Plaintiffs argue that "Plaintiffs claims against Molina relate to independent actions taken by [Molina] to fraudulently conceal material facts that should have been properly disclosed in VaporFi's Franchise Disclosure Document ('FDD') and to otherwise

fraudulently induce Plaintiffs and other similarly situated parties to invest in the VFI franchise system to purchase both franchise and development rights."  (D.E. 52 at 1-2.) They argue that Molina is liable in his personal capacity for failing to disclose lawsuits against him when preparing the FDD.  (Id.)  As such, they argue that litigation against Molina is feasible even if the claims against VaporFi must be arbitrated.  (Id. at 4-7.)

In their Reply, Turning Point and IVG argue that even if Plaintiffs' claims against them are direct, and not derivative of VaporFi, they should be stayed because the claims against all of them are identical.  (D.E. 21 at 5.)  As such, "allowing those claims to proceed against Turning Point and IVG at the same time as the arbitration of the same claims against VaporFi creates a risk of inconsistent results."  (Id. at 8.)  Furthermore, "because the subsidiary VaporFi undertook the conduct at issue, regardless of Plaintiffs' efforts to assert claims directly against Turning Point and IVG, those claims are dependent on the potential liability and conduct of VaporFi, and should therefore be stayed pending the outcome of the arbitration proceedings with respect to these issues."  (Id.)

In his Reply, Molina also argues that because the claims against him are identical to the claims against VaporFi, the Court should stay the case pending arbitration between Plaintiffs and VaporFi to avoid the possibility of inconsistent results.  (D.E. 53 at 1-2.)  He argues that it is not feasible to proceed with the claims against him in this Court while Plaintiffs pursue identical claims against VaporFi in arbitration, (id. at 4-7), and in any event, the FDUTPA claim against Molina is dependent on VaporFi first being found liable, (id. at 7-8).

The court finds that this case should be stayed as to Turning Point, IVG, and Molina pending the arbitration between Plaintiffs and VaporFi because the claims against all of these defendants are based upon the same operative facts and are inherently inseparable. See Hill, 282 F.3d at 347. Briefly, Plaintiffs allege that Turning Point, IVG, and Molina violated FDUTPA, committed common law fraud, and are liable for negligent misrepresentation under Florida law because they failed to disclose multiple lawsuits against Molina in VaporFi's FDD. (Am. Compl. ¶¶ 132-44, 145-59, 160-74.) These claims are, or may be, dependent on the claims against VaporFi. At a minimum, these claims are intertwined and involve common questions of fact that are within the scope of the Arbitration Agreement between Plaintiffs and VaporFi. Permitting Plaintiffs to litigate their claims against Turning Point, IVG, and Molina in this Court could lead to inconsistent results with the arbitration panel. The Court further observes that the fraud and negligent misrepresentation claims explicitly allege that Turning Point is liable as an "alter ego" of VaporFi and IVG, (id. ¶¶ 150-65), and Count IV seeks a declaratory judgment that Turning Point and IVG are liable as successors or alter egos of VaporFi, (id. ¶¶ 175-93). Such claims should be stayed pending arbitration. See Builders Fed. (Hong Kong) Lgd. v. Turner Constr., 655 F. Supp. 1400, 1407 (S.D.N.Y. 1987) (staying claims against "alter ego" United States corporation pending arbitration between plaintiffs and foreign corporation because permitting litigation to proceed "would constitute an intrusive action against which comity counsels").

Because there are common questions of fact and significant overlap in Plaintiffs claims against Turning Point, IVG, and Molina, permitting this lawsuit to proceed may

undermine the arbitration proceedings and thwart the federal policy in favor of arbitration. The Court is unpersuaded by Plaintiffs' argument that granting a stay may permit Turning Point and IVG to engage in corporate restructuring for the sole purpose of avoiding liability. Consequently, the Court exercises its discretion to stay the claims against Turning Point, IVG, and Molina pending arbitration between Plaintiffs and VaporFi. See Aliff v. Vervent, Inc., Case No.: 20-cv-00697-DMS-AHG, 2020 WL 5709197, at *12 (S.D. Cal. Sept. 24, 2020) (staying claims against nonsignatory to arbitration agreement because the plaintiffs' claims against the nonsignatory defendant involved common questions of fact with the signatory defendant); Patnik v. Citicorp Bank Trust FSB, 412 F. Supp. 2d 753, 763 (N.D. Ohio 2005) (staying claims against nonsignatories to arbitration agreement because claims against nonsignatories were "inextricably intertwined" with the claims against the signatory defendant).

Finally, although DCV has not moved to stay pending arbitration, and instead moves to dismiss Counts II and III (the only claims asserted against DCV), (see D.E. 58), the Court finds that judicial economy counsels in favor of staying the case against DCV as well. All of the Defendants are named in Counts II and III, and although the factual underpinning giving rise to those claims against DCV differs somewhat from that of the other Defendants, it would be inefficient to permit those claims to proceed against one Defendant while staying the case as to the other four Defendants. See Patnik, 412 F. Supp. 2d at 763 (finding that "[e]fficiency concerns" favored a stay of claims against nonsignatory defendants pending arbitration with signatory defendant). Therefore, the

Court exercises its discretion to stay the case against DCV pending arbitration between Plaintiffs and VaporFi.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.  Defendant VaporFi Franchising, LLC's Motion to Compel Arbitration and stay the Case (D.E. 16) is **GRANTED**;

2.  Defendant Turning Point Brands, Inc. and Defendant International Vapor Group, Inc.'s Motion to Stay Pending Arbitration (D.E. 14) is **GRANTED**;

3.  Defendant Nicolas Molina's Motion to Stay Pending Arbitration (D.E. 47) is **GRANTED**;

4.  This case is hereby **STAYED AND ADMINISTRATIVELY CLOSED** pending arbitration between Plaintiffs and VaporFi;

5.  Defendant DCV Franchise Group's Motion to Dismiss Plaintiffs' Amended Complaint (D.E. 58) is **DENIED WITHOUT PREJUDICE**;

6.  Plaintiffs may move to reopen the case within fourteen days after the completion of the arbitration proceedings, if appropriate; and

7.     DCV may move to reactivate its Motion to Dismiss within ten days of the

Court's Order reopening the case.

**DONE AND ORDERED** in Chambers at Miami, Florida this 16th day of

November, 2020.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**